Shawn T. Farris, #7194
FARRIS & UTLEY, PC
2107 W. Sunset Blvd, 2nd Floor
St. George, UT 84770
Telephone: (435) 634-1600
Fax: (435) 628-9323
Attorneys for Debtor
Farris@FarrisUtley.com

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF UTAH

| In re:<br>Snow Canyon Clinic, Inc.<br><br>Debtor, | Chapter 11<br>Case No.: 14-22277<br>Honorable William T. Thurman |
|---|---|

### DEBTOR'S OBJECTION to MOTION TO DISMISS OR CONVERT FILED BY SR FREESH-METRO, L.P., GARY L. JONES and MARY F. JONES

Snow Canyon Clinic, Inc (hereinafter referred to as "SCC"), as Debtor-in-Possession, by and through its attorney of record in this matter, Shawn Farris of Farris & Utley, PC, hereby files its Objection to the Motion to Dismiss or Convert, which was filed by SR Freesh-Metro, L.P., Gary L. Jones and Mary F. Jones. This Objection is supported by the Declaration of Rebecca Johnson, the CEO of SCC, and the Declaration of Trevor Lewis, the CFO of SCC.

1. On the 11th of March, 2014, SCC filed its petition for relief under Chapter 11 of the U.S. Bankruptcy Code. *See, Doc. No. 1*.

2. Prior to the filing of the petition in bankruptcy, SCC had elected a business decision to relocate from its operating facility located in Ivins, Utah to other locations in the Washington County area. *Declaration of Trevor Lewis at ¶26*.

3. Prior to the filing of this bankruptcy case, SCC was a tenant of SR Freesh Metro, LLP ("SR Freesh Metro") for the occupation of a commercial building ("SR Freesh Metro Building") located in Ivins, Utah. *Id.*

4. The petition for relief and reorganization under Chapter 11 continues to be pursued to improve the continued operations of the SCC's business operations, preservation of availability of the medical and health care to SCC's patients, and to the success of SCC's reorganization, including the optimization of return to both unsecured and secured creditors of SCC. *Declaration of Rebecca Johnson at ¶6.*

5. SCC operates a medical and health-care clinic in southern Utah. *Declaration of Rebecca Johnson at ¶9 and Declaration of Trevor Lewis at ¶7.*

6. SCC has a well-developed and solid local patient base. The principal reason for this bankruptcy was a series of financial constraints which occasioned the necessity of filing the petition to initiate this case. *Declaration of Rebecca Johnson at ¶10.*

7. SCC has provided out-patient medical services to over 3,300 unique patients since filing on March 11, 2014. *Declaration of Rebecca Johnson at ¶11.*

8. Even more significantly, SCC has also continued to coordinate care for over 7,500 active patients in the local community. *Declaration of Rebecca Johnson at ¶12.*

9. SCC has provided a consistent volume of patient services as demonstrated by only a 3% variation in patient visits when comparing the time periods of six (6) months pre-petition to six (6) months post-petition. *Declaration of Rebecca Johnson at ¶13.*

10. SCC continues to significantly improve patient care operations with accommodations for new locations. *Declaration of Rebecca Johnson at ¶14.*

11. However, in the recent past months, physician absences due to personal medical conditions and the functional need for replacement of key personnel, has created decreases in overall revenue and profitability as a temporary basis. *Declaration of*

*Rebecca Johnson at ¶15..*

12. SCC experienced a reduction in the volume of sleep services in the new locations. A restroom is required for patient use during overnight sleep studies. The landlord of the St. George location agreed to install a restroom in the office, but there were delays in the planning and installation. In an effort to resume sleep services as soon as possible, SCC temporarily moved sleep services to space within the Santa Clara location. This allowed SCC to continue providing sleep services, but reduced the volume from two (2) studies per night to one (1) study per night. *Declaration of Rebecca Johnson at ¶16 and Declaration of Trevor Lewis at ¶¶29-30.*

13. This attributes to a decrease in Revenue by $5,540.17 per month, this amount based on our six (6) month average revenue prior to the loss of the ability to operate two (2) sleep beds. *Declaration of Trevor Lewis at ¶31.*

14. The restroom installation will be complete on or before October 13, 2014, and SCC sleep services will be relocated to the St. George office resuming the previous volume of two (2) studies per night. The temporary use of the Santa Clara office for sleep services allowed SCC to maintain 79% of the sleep studies during restroom installation and will increase to pre-petition volumes upon relocation to the St. George offices. The operation two (2) sleep studies per night will restore the revenue without increasing overhead, which will benefit SCC's reorganization and increase the return for both unsecured and secured creditors of SCC. *Declaration of Rebecca Johnson at ¶17.*

15. Dr. Laura Schlagel is employed by SCC and is also an owner of SCC. *Declaration of Trevor Lewis at ¶9.*

16. During the past six (6) months, Dr. Schlagel has experienced some involuntary reduction in productivity due to her personal health and medical issues. *Declaration of Trevor Lewis at ¶10.*

17. Dr. Laura Schlagel's post-petition productivity was reduced in May, June and July of 2014 due to a spontaneous medical condition requiring her to undergo three (3) urgent surgical procedures on her eye and long-distance travel away from the SCC's business locations. *Declaration of Rebecca Johnson ¶18 and Declaration of Trevor Lewis at ¶11.*

18. Despite this set back occasioned by her personal health issues, Dr. Schlagel held Saturday clinics from May to September 2014 in an attempt to provide uninterrupted care to her patients, recover productivity and contribute to SCC's reorganization process. *Declaration of Rebecca Johnson at ¶19.*

19. Moreover, these personal health issues have necessitated that she take time off from SCC's patients for travel to and from her attending eye specialist for the surgeries, as well as recovery time following these surgeries. *Declaration of Trevor Lewis at ¶12.*

20. Moreover, during this same post-petition time period and despite her personal medical issues, Dr. Laura Schlagel lengthened her daily schedule to provide increased patient and EMG services. *Declaration of Rebecca Johnson at ¶20.*

21. It has been observed that Dr. Schlagel appears to be improving health-wise and that Dr. Schlagel will be able to return to work on a full time basis which will have a positive effect on the corporate revenue. *Declaration of Trevor Lewis at ¶13.*

22. There has been a short-term loss of potential revenue occasioned by Dr. Schlagel's time out of practice due to the aforementioned surgeries. *Declaration of Trevor Lewis at ¶14.*

23. Dr. Kirk is also employed as a physician by SCC and he is co-owner of SCC. *Declaration of Trevor Lewis at ¶15.*

24. In recent months, Dr. Kirk's productivity has been involuntarily reduced to due his health issues. *Declaration of Trevor Lewis at ¶16.*

25. Dr. Vernon Kirk's post-petition productivity has been reduced due to a series of personal medical problems which have limited his productivity. Since June 2014, Dr. Kirk has been hospitalized for multiple surgical procedures. While his post-petition contributions to revenue generation have been less than desired, he has been actively involved in the management of his patient's care and is now returning to the SCC's offices. *Declaration of Rebecca Johnson at ¶21 and Declaration of Trevor Lewis at ¶¶17-19.*

26. The productivity Dr. Kirk generates will generate additional diagnostic services which will benefit SCC's reorganization and optimize the return for both unsecured and secured creditors of SCC. *Declaration of Rebecca Johnson at ¶22.*

27. Dr. Kirk has been limited in his ability to provide physician services due to the procedures and recovery required by these procedures, Dr. Kirk has not been able to generate revenue through the care of his patients that would be consistent with a physician who is able to work at least forty hours per week. *Declaration of Trevor Lewis at ¶19.*

28. It appears that Dr. Kirk's health is improving and that Dr. Kirk will be able to increase his productivity on a weekly basis and thereby increase the revenue to SCC. *Declaration of Trevor Lewis at ¶20.*

29. The increase in productivity of Dr. Kirk will generate additional revenues which can be

utilized in a successful reorganization of SCC. *Declaration of Trevor Lewis at ¶21*.

30. Dr. Kirk's temporary performance at a less-than full time rate has resulted in potential losses of revenue. *Declaration of Trevor Lewis at ¶22*.

31. Dr. Esplin is an employed physician with SCC. Dr. Esplin is in his first-year of employment with SCC as a licensed physician at the time of filing in 2014. *Declaration of Trevor Lewis at ¶23*.

32. Dr. Esplin has been operating on a guaranteed-salary basis per his pre-petition employment agreement. This employment agreement provides that his salary basis will become productivity-based wage in January of 2015. This change in calculation will eliminate any shortfall of his revenue, should his wage need to be reduced to cover associated expenses, while still providing contribution to overhead. *Declaration of Trevor Lewis at ¶24*.

33. The improved situation with Dr. Esplin is during the last six (6) months Dr. Esplin has been building his practice at an average rate of fifteen (15%) per month. This increase can be attributed partially to the new location. With ongoing increases in revenue, it is the opinion of Trevor Lewis that Dr. Esplin's practice will continue to improve financially and generate additional funds for a successful reorganization plan. *Declaration of Trevor Lewis at ¶25*.

34. The aggregate monthly rents expense for all of the new locations of the SCC business operations is $10,814.57 which represents a reduction in pre-petition rent overhead by $9,895.83 per month or $118,749.96 per year. *Declaration of Trevor Lewis at ¶27*.

35. The aggregate monthly utility expense in all of the new locations of SCC is $644.91

which represents a reduction in pre-petition utility overhead by $2,176.88 per month. *Declaration of Trevor Lewis at ¶28.*

36. SR Freesh and Joneses have alleged that there is a substantial and continuous decrease in cash flow. However, that is inaccurate and does not reflect the positive, upward current trend. *Declaration of Trevor Lewis at ¶32.*

37. The ending cash balance for March 2014 is not reflective of the accurate financial stability due to the fact that business expenses were not paid pending court approval and orders on SCC's first-day motions. *Declaration of Trevor Lewis at ¶33.*

38. Both pre-petition and post-petition the calendar months July are historically low revenue months for SCC. *Declaration of Trevor Lewis at ¶34*

39. The numbers cited in the Motion to Dismiss or Convert do not reflect the actual financial stability and future profitability of SCC. The cash flow was also impacted by the post-petition payments made payable on the line of credit to Gary L. Jones. *Declaration of Trevor Lewis at ¶35.*

40. The ending balance of the end of August, 2014 is $53,170; showing a post-petition increase. *Declaration of Trevor Lewis at ¶36.*

41. There will be a decrease in the accounts receivable due to the discontinuance of imaging operations by SCC. The accounts receivable is on the gross side of revenues and the imaging division was historically a business loss. The elimination of the imaging department creates a positive change to the on-going business operations of SCC now and in the foreseeable future. *Declaration of Trevor Lewis at ¶37.*

42. Rebecca Johnson has worked, and continues to work, with the owners of SCC and the

CFO on an on-going and continual basis. These meetings include the working on budgets, forecasts, increasing productivity, etc in an effort to increase the profitability and the feasibility of a chapter 11 reorganization plan for the benefit of all of the creditors of SCC. *Declaration of Rebecca Johnson at ¶23.*

43. Both the CFO and CEO of SCC opine that SCC has a solid possibility of formulating a feasible plan of reorganization to the benefit of all of its creditors. *Declaration of Rebecca Johnson at ¶25 and Declaration of Trevor Lewis at ¶38.*

*44.* The setbacks in productivity described above are temporary in nature and do not reflect as substantial or continuing loss to or diminution of the estate. *Declaration of Rebecca Johnson ¶26.*

45. Post-petition marketing efforts have been significantly reduced in comparison to pre-petition marketing efforts due to SCC's limited use of cash collateral and prioritizing limited employee resources to daily medical care services, reorganization efforts and preparation of responses to motions and objections filed by creditors Joneses and SR Freesh. *Declaration of Rebecca Johnson at ¶24.*

Argument

SR Freesh and the Joneses have filed their Motion to Dismiss or to Convert by which they assert that there is "cause" as defined by 11 U.S.C. 1112 (SCC, as the Debtor-in-Possession has experienced

The material subsection of 11 U.S.C. §1112 provides as follows:

>   (4) For purposes of this subsection, the term "cause" includes—
>       (A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;

8

Subsection (A) of section (4) provides for two conjunctives elements in order to establish that there is a "cause" for dismissal or conversion. First, there must be evidentiary support that supports a finding that there is a "substantial or continuing loss to or diminution of the [Debtor's] estate". The second prong of this analysis requires evidentiary support that there is "… the absence of a reasonable likelihood of rehabilitation".

SCC continues to be a viable business, generating profits and paying its on-going accounts payables. The dismissal of this Chapter 11 case would injure both secured and unsecured creditors. The conversion of this case to a Chapter 7 case would also injure both secured and unsecured creditors. There have been substantial amounts of time and resources expended by SCC in defending against the motions and objections filed in this case. This time and resources has taken away from the time and efforts that could have been better utilized in increasing the post-petition profitability of SCC that leads to the proposal of a feasible plan of reorganization presented in good faith.

The temporary shortfalls were occasioned by factors beyond the control of SCC. The personal medical leave necessitated by the health issues of Drs. Schlagel and Kirk have impacted cash flow and revenues on a temporary basis. However, these trends are neither substantial nor continuing in the long run. There is not cause, as defined by Section 1112 of the Bankruptcy Code. SCC should be provided a reasonable time period to propose a feasible plan which can then be considered by this Court. The doors of SCC remain open for business. There have been significant and substantial decreases in overhead costs, such as rent overhead and utility expenses. The relocation to the new offices has been post-petition, and continues to be, a positive to the financial viability to SCC and SCC's secured and unsecured creditors.

WHEREFORE, based upon the foregoing facts and arguments, SCC respectfully requests that the Motion to Dismiss or Convert be denied.

Dated this 29th day of September, 2014.

/s/ Shawn Farris
Shawn T. Farris
Attorney for Debtor

CERTIFICATE OF SERVICE

It is hereby certified that on the 29th of September, 2014, a true and correct copy of the foregoing was duly served upon the following via the ECF system:

Peter J. Kuhn
U.S. Trustee Office
Peter.J.Kuhn@usdoj.gov

Penrod W. Keith
Elijah L. Milne
Attorneys for SR Freesh Metro, L.P. and Gary L. Jones and Mary F. Jones
pkeith@djplaw.com
emilne@djplaw.com

/s/ Shawn Farris
Attorney for Debtor.